UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| | | | |
|---|---|---|---|
| Case No. | **EDCV 20-1374 JGB (SPx)** | Date | September 28, 2021 |
| Title | *Sarah Hill et al. v. Canidae Corporation* | | |

Present: The Honorable  JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) Order (1) GRANTING Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. No. 69); and GRANTING IN PART AND DENYING IN PART Plaintiffs' Motion for Attorneys' Fees, Costs, and Class Representative Enhancement Payments. (Dkt. No. 65.)

Before the Court are Sarah Hill and Monica O'Rourke's ("Plaintiffs") unopposed motions for final approval of class action settlement ("MFA," Dkt. No. 69) and for attorneys' fees, expenses, and service awards ("Fee Motion," Dkt. No. 65) (collectively, the "Motions"). The Court held a final approval hearing on September 13, 2021. Upon consideration of the papers filed in support of the Motions, as well as oral argument, the Court GRANTS the MFA and GRANTS IN PART AND DENIES IN PART the Fee Motion.

## I. BACKGROUND

On July 9, 2020, Plaintiffs filed a complaint against Defendant Canidae Corporation ("Defendant"). ("Complaint," Dkt. No. 1.) On October 19, 2020, Plaintiffs filed a First Amended Complaint. ("FAC," Dkt. No. 33.) On March 2, 2021, Plaintiffs filed a Second Amended Complaint, which is the operative complaint. ("SAC," Dkt. No. 44.) The SAC alleges eight causes of action: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) unjust enrichment; (4) violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761, et seq.; (5) violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq.; (6) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.; (7) violation of the

New York Deceptive Trade Practices Act ("GBL"), N.Y. Gen. Bus. Law § 349; and (8) violation of New York Gen. Bus. Law § 350.

Plaintiffs filed an unopposed motion for preliminary approval of class action settlement on March 5, 2021. ("MPA," Dkt. No. 45.) The Court granted the MPA on April 2, 2021. ("MPA Order," Dkt. No. 52.) In the MPA Order, the Court certified a Settlement Class; appointed Gregory F. Coleman, Lisa A. White, Alex R. Strauss, and Arthur M. Stock of Greg Coleman Law PC, Nick Suciu III of Barbat, Mansour, Suciu & Tomina, PLLC, Daniel K. Bryson and J. Hunter Bryson of Whitfield Bryson, LLP, and Gary E. Mason of Mason, Lietz, and Klinger LLP as Class Counsel; appointed Sarah Hill and Monica O'Rourke as class representatives; appointed Heffler Claims Group as the settlement administrator; approved the requisite Class Notice form; and authorized the mailing of Class Notice forms. (Id. at 13.) The Court set the final fairness hearing for Monday, September 13, 2021 at 9:00 a.m. (Id.)

Plaintiffs filed the unopposed MFA on August 16, 2021, and included in support the following documents:

- Memorandum of Law in Support of the Class Action Settlement ("MFA Memorandum," Dkt. No. 70");
- Declaration of Daniel K. Bryson in Support of the MFA and Fee Motion ("D. Bryson Declaration," Dkt. No. 67);
- Declaration of J. Hunter Bryson in Support of the MFA and Fee Motion ("J. Bryson Declaration," Dkt. No. 68);
- Declaration of Jonathan Shub in Support of the MFA and Fee Motion ("Shub Declaration," Dkt. No. 72); and
- Declaration of Jeanne C. Finegan ("Finegan Declaration," Dkt. No. 77).

Plaintiffs also filed the Fee Motion on that same date, with the following documents in support:

- Memorandum of Law in Support of the Fee Motion ("Fee Motion Memorandum," Dkt. No. 66);
- Declaration of Gary E. Mason in Support of the Fee Motion ("Mason Declaration," Dkt. No. 73);
- Declaration of Charles E. Schaffer in Support of the Fee Motion ("Schaffer Declaration," Dkt. No. 76);
- D. Bryson Declaration;
- J. Bryson Declaration; and
- Shub Declaration.

Defendant does not oppose the MFA or the Fee Motion.

//
//

//
//

## II. THE SETTLEMENT AGREEMENT

The parties finalized and executed the class action settlement agreement in March 2021. ("Agreement," Dkt. No. 46-1.) The Agreement defines the settlement class ("Class") as follows:

> [A]ll persons residing in the United States and its territories who purchased the Products in the United States and its territories for personal, family, or household purposes, and not for resale, after July 9, 2016 and prior to and including the Notice Date. Excluded from the Class are (a) all persons who are employees, directors, officers, and agents of Canidae, or its subsidiaries and affiliated companies; (b) persons or entities who purchased the Products primarily for the purposes of resale to consumers or other resellers; (c) governmental entities; (d) persons who timely and properly exclude themselves from the Class as provided in this Settlement; and (e) the Court, the Court's immediate family, and Court staff.

(Agreement ¶ 9; MFA at 3.) The Products at issue are listed in Exhibit A to the Agreement.

### A. Settlement Summary

The Settlement Agreement provides monetary benefits to Settlement Class Members who submit a valid and timely claim form, under two Options:

- Option 1: A Class Member who provides valid proofs of purchase[1] for qualifying products during the Class Period may recover five dollars ($5.00) for every fifty dollars ($50.00) spent, as reflected in the valid Proofs of Purchase, up to a maximum of one hundred and twenty-five dollars ($125.00) per household.[2] Any amounts of less than fifty dollars ($50.00) will neither be eligible nor receive prorated Benefit amounts.

- Option 2: A Class Member who does not provide valid proof of purchase (or a Class Member who provides proofs of purchase but whose total purchases during the Class Period fall below fifty dollars ($50.00)) may recover exactly five dollars ($5.00) per household.

---

[1] Proofs of purchase may include credit card receipts, store receipts, physical product packaging, or other documentation that reasonably establishes the fact and date of purchase of the product. (Agreement ¶ 32.)

[2] A household is defined as "a single mailing address, regardless of the number of Class Members residing there." (Agreement ¶ 22.)

(Agreement ¶ 51.)  Class Members may make a claim under Option 1 or Option 2, but not both.  (Id.)  Although the individual claims are capped under the above Options, the total settlement is uncapped.  (MPA at 6; MFA at 1–2, 10–11.)

In addition, the Agreement provides the following financial terms:

- Attorneys' fees: $1,284,889.00
- Litigation Costs: $15,100.00
- Total service award for two class representatives: $10,000.00

### B.  Financial Terms

#### 1.  Settlement Class Members

"Settlement Class Members" is defined as "all persons residing in the United States and its territories who purchased the Products in the United States and its territories for persona, family, or household purposes, and not for resale, after July 9, 2016 and prior to and including the Notice Date."  (Agreement ¶ 9.)  The Products at issue are listed in Exhibit A to the Agreement.

There are an estimated 24,747,000 consumers who fall within the Class definition, though the actual class is likely much smaller.  (Finegan Decl. ¶ 10.)

#### 2.  Payment and Distribution of Funds

Class Members who submit valid claims will be able to select an electronic payment option on the Claim Form.  (Agreement ¶ 53.)  Within 30 days of the effective date, the Settlement Administrator will send to each Claimant an email (or a postcard, if no email address is available) that (a) explains that the Court has granted final approval of the Settlement; (b) confirms the actual amount of the Claimant's benefit; (c) provides a menu of electronic payment options, including direct deposit and various digital payment methods; and (d) explains that, in the event of a non-response by the deadline, the benefit shall be paid by check and delivered by mail.  Claimants must select one of the identified payment options and provide the information required to make the payment within 30 days after the email or postcard requesting the Claimant's payment preference is sent.  (Agreement Ex. G ¶ 25.)  The Settlement Administrator will begin to pay valid claims after this 30-day response period, and will complete payment no later than 90 days after the effective date.  (Id.)  All payments issued will be valid for 90 days.  (Agreement ¶ 53.)

#### 3.  Class Representative

The Agreement provides for an incentive award of up to $5,000 to each Plaintiff, up to a total of $10,000, in recognition of their time and effort in pursuing this action.  (Fee Mot. at 3, 16; Agreement ¶ 61.)

### 4. Settlement Administration Costs

The Court appointed Heffler Claims Group ("Heffler") as the settlement administrator. (MPA Order at 13.) Heffler now conducts business as Kroll Settlement Administration ("Kroll"). (Finegan Decl. ¶ 1.) Defendant agrees to pay all fees and expenses incurred by the settlement administrator, although the Agreement does not set a cap. (Agreement ¶ 54.) Kroll administered the Court-approved Notice Plan, published digital notice, and has kept track of claims filed, as well as any opt-out requests and objections to the Agreement. (See Finegan Decl.)

### 5. Attorneys' Fees and Costs

Class Counsel request an award of attorneys' fees in an amount of $1,284,889.00. (Fee Mot. at 3.) Class Counsel also request a reimbursement for actual litigation costs in the amount of $15,100.00. (Fee Mot. at 3.) Thus, Class Counsel request a total of $1,299,989.00 in attorneys' fees and expenses, slightly less than the $1,300,000.00 authorized in the Agreement. (Agreement ¶ 64.)

## C.  Injunctive Relief

The Agreement does not include any injunctive relief.

## D.  Release

All Settlement Class Members who do not request exclusion agree to release:

> Any and all claims, demands, rights, damages, obligations, suits, debts, liens, and causes of action under common law or statutory law (federal, state, or local) of every nature and description whatsoever, ascertained or unascertained, suspected or unsuspected, existing or claimed to exist, including known and unknown claims (as described … below) as of the Claim Form Deadline by all of the Plaintiffs and all Class Members (and, to the extent on behalf of Plaintiffs and Class Members, their respective heirs, guardians, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns) that (1) were asserted or could have been asserted in this Action against Defendant relating to the Products (including, but not limited to, the naming of the Product(s) as "PURE" and/or "Limited Ingredient," additional labeling representations including, but not limited to that any Product is "Grain Free," and any other claims regarding the labeling and marketing of, and/or ingredients in, the Product(s)), and (2) arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, occurrences, or events that were or could have been directly or indirectly alleged or referred to in the Action (including but not limited to alleged violations of state consumer protection, unfair competition, and/or false or deceptive advertising statutes, breach of

> express or implied warranty, fraud, negligence, product liability, conspiracy, unjust enrichment, restitution, declaratory or injunctive relief, and other equitable claims or claims sounding in contract or tort).

("Release"). (Agreement ¶ 34.) This includes a voluntary waiver of Cal. Civil Code § 1542 by Plaintiffs and Class Members of "known and unknown claims that were or could have been brought in the Action." (Agreement ¶ 71.)

### E. Notice

The Notice Program consists of multiple components, designed to reach approximately 75 percent of the target audience, which is defined as "all [consumers] who purchase 'other' brand dry pet food (i.e., brands other than Alpo, Eukanuba, Pedigree, Purina, etc.)." (Finegan Decl. ¶ 10.) This is estimated to be 24,757,000 consumers. (Id.) While the actual class is much smaller than the target audience population, the Notice Plan is calculated to reach the larger target audience population. (Id.) In addition, the Notice Plan has an estimated minimum frequency (the average number of times each Class Member will have the opportunity to see the message) of two times. (Id. ¶ 11.) The Notice Plan include the following elements: (1) targeted online display banner advertising; (2) "Keyword Search" targeting class members; (3) a press release; (4) social media advertising on Facebook, Instagram, and Twitter; (5) a settlement informational website; and (6) a 24-hour, 7-day a week toll-free information telephone line. (Id. ¶ 12.) The Notice Program successfully reached its goal of ensuring that 75% of the target audience population, or approximately 18,567,750 consumers, received notice. (MFA at 4; Finegan Decl. ¶ 29.)

The Notice Program, as approved by the Court, has been substantially completed by the Settlement Administrator. Kroll commenced the Notice Program on April 30, 2021. (Finegan Decl. ¶ 3.) Kroll served over 106 million online display, search, and social media ads. (Id. ¶ 22; Finegan Decl. Ex. A.) On April 30, 2021, Kroll issued a press release of the Agreement, which resulted in approximately 241 news mentions of the Agreement. (Finegan Decl. ¶ 27; Finegan Decl. Ex. B.) On April 28, 2021, Kroll created a website dedicated to the Settlement Agreement, which includes the settlement Notice Form. (Finegan Decl. ¶ 15.) As of August 12, 2021, over 77,700 users have visited the site with over 171,310 page views. (Id.)

On April 15, 2021,[3] Kroll reserved a toll-free number for Class Members to call and obtain information about the Agreement. (Id. ¶ 16.) Since the toll-free number went live on April 28, 2021, 45 Class Members have called the toll-free number. (Id.)

Class Members had until June 14, 2021 to submit objections or requests for exclusion. (Id. ¶ 20.) Kroll did not receive any objections or requests for exclusion. (Id. ¶¶ 20–21.) At the September 13, 2021 hearing, Class Counsel confirmed this remained the case.

---

[3] The Finegan Declaration states the date as April 15, 2020. Because the Settlement Agreement was executed in March 2021, the Court assumes the correct date is April 15, 2021.

### F. Claims Process

The Settlement Administrator has administered the Claims Process, as approved by the Court. Class Members had access to the Claim Form via the Settlement's website for twenty-four hours a day. (Finegan Decl. ¶ 15; Agreement, Ex. C.) Class Members could submit a Claim Form either by completing a paper Claim Form and submitting it to the Settlement Administrator via first class mail, or by submitting a Claim Form electronically online from the website. (Finegan Decl. ¶¶ 14–15; Agreement ¶¶ 32, 49.) Claimants who submitted an online Claim Form could select a preferred payment method from six options, ranging from Pay Pal and Venmo to DirectDeposit or Check. (Finegan Decl. ¶ 18.) Class Counsel noted at the September 13, 2021 hearing that claimants must sign a declaration to submit the Claim Form. As of August 11, 2021, a total of 48,080 claims have been filed, 2,000 of which were filed with a proof of purchase. (Id. ¶ 19.) Kroll is evaluating the claims for validity. (Id.) At the September 13, 2021 hearing, Class Counsel stated that the total number of claims filed has not changed, and confirmed that Kroll continues to evaluate the claims.

Settlement Class Members who wished to opt-out could do so by sending a written request to the Settlement Administrator at the address designated in the Long Form Notice. (Agreement ¶ 57; Ex. D, Long Form Notice ¶ 15.) Class Members who intended to object to the fairness, reasonableness, and/or adequacy of the Settlement could file a written objection with the Court and send the written objection to the Settlement Administrator, Class Counsel, and Defense Counsel. (Agreement ¶¶ 99–100.) Kroll did not receive any opt-out requests or objections. (Finegan Decl. ¶¶ 20–21.)

### III.  LEGAL STANDARD

### A. Class Action Settlement

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). A strong judicial policy favors settlement of class actions. Id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness. Cheng Jiangchen v. Rentech, Inc., 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)). Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement. Hanlon, 150 F.3d at 1026. "The settlement must stand or fall in its entirety." Id.

//
//
//

In order to approve a class action settlement, the Court must conduct a three-step inquiry. See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act. Id. Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied. Id. Finally, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2). Id.

### B. Attorneys' Fees

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2) of the Federal Rules of Civil Procedure. While the rule specifies that requests shall be made by motion "unless the substantive law governing the action provides for the recovery of . . . fees as an element of damages to be proved at trial," the rule does not itself authorize the awarding of fees. "Rather, [Rule 54(d)(2)] and the accompanying advisory committee comment recognize that there must be another source of authority for such an award . . . [in order to] give [] effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award." MRO Commc'ns, Inc. v. AT&T Co., 197 F.3d 1276, 1281 (9th Cir. 1999).

In class actions, statutory provisions and the common fund exception to the "American Rule" provide that authority for awarding attorneys' fees. See Newberg on Class Actions § 14.1 (4th ed. 2005) ("Two significant exceptions [to the 'American Rule'] are statutory fee-shifting provisions and the equitable common-fund doctrine."). Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Under normal circumstances, once it is established that a party is entitle to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

### IV. DISCUSSION

### A. Class Action Fairness Act ("CAFA")

The parties invoke federal jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (SAC ¶ 7.) CAFA requires the following:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official . . . .

28 U.S.C. § 1715(b). The statute provides detailed requirements for the contents of such notice. Id. A court is precluded from granting final approval of a class action settlement until the notice requirement is met:

> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)].

28 U.S.C. § 1715(d).

The MFA does not confirm that the parties have met CAFA's notice requirements. At the hearing on the MFA on September 13, 2021, Defendant's Counsel represented that Defendant timely served notices on March 15, 2021, in accordance with CAFA to the Attorney General of the United States and the Office of the Attorney General in all States where Class Members reside and at least 90 days before the hearing date. Thus, the Court finds that the CAFA notice requirements have been satisfied.

### B. Rule 23(a) and (b) Requirements

In the April 2, 2021 MPA Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3). (MPA Order at 6–9.) The Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 974 (E.D. Cal. 2012); see also Harris v. Vector Marketing, 2012 WL 381202, at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); In re Apollo Group Inc. Securities Litig., 2012 WL 1378677, at *4 (D. Ariz. Apr. 20, 2012). Here, the Settlement Class has not changed since it was conditionally certified. (MFA at 3.) All the criteria for class certification remain satisfied, and the Court hereby confirms its order certifying the Settlement Class.

### C. Rule 23(c)(2) Notice Requirements

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). In its MPA Order, the Court approved the notice sent to Settlement Class Members. (MPA Order at 13.) Kroll completed notice in accordance with the procedures approved by the Court. (See Finegan Decl.) The Notice Program served over 106 million online display, search, and social media ads. Kroll received 45 calls, tracked more than 77,700 users and 171,310 views on the Settlement website, and received 48,080 claims—of which 2,000 claims were filed with a proof of purchase. (MFA at 4, 14; Finegan Decl. ¶ 19.) The Court concludes that the Notice Program was the best notice practicable under the circumstances and, thus, adequate. As such, the Court finds this factor weighs in favor of final approval.

**D. Fair, Reasonable, and Adequate**

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv., 688 F.2d 615, 624 (9th Cir. 1982). The Court's inquiry is procedural in nature. Id. Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court held a final approval hearing on September 13, 2021.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

(1) the strength of the plaintiff's case;
(2) the risk, expense, complexity, and likely duration of further litigation;
(3) the risk of maintaining class action status throughout the trial;
(4) the amount offered in settlement;
(5) the extent of discovery completed, and the stage of the proceedings;
(6) the experience and views of counsel;
(7) the presence of a governmental participant; and
(8) any opposition by class members.

Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998). This list of factors is not exhaustive, and a court may balance and weigh different factors depending on the circumstances of each case. See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

**1. Strength of Plaintiffs' Case**

The initial fairness factor addresses Plaintiffs' likelihood of success on the merits. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964–65 (9th Cir. 2009). In determining the probability of Plaintiffs' success on the merits, there is no "particular formula by which that outcome must be tested." Id. at 965. In the MPA and MFA, Plaintiffs note their confidence in the merits of their case. (MPA at 13; MFA at 9.) However, Plaintiffs also recognize weaknesses that would pose hurdles to the Class ultimately prevailing, including: the absence of facts that could provide greater relief, the difficulty of proving certain conditions for every Class Member and of establishing damages, and the general risk of extended litigation. (MPA at 13–17; MFA at 8-9). As a result, the Court finds this factor weighs in favor of granting final approval.

//
//
//
//
//

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

To assess the risk, complexity, and likely duration of further litigation, the Court evaluates the time and cost required. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

As noted in the previous factor, Plaintiffs argue that the value of the Agreement far outweighs the risk of producing and defending evidence on contested issues, including: whether, since "Canidae contended that soy was not a grain, [ ] the 'grain free' label was not misleading to a reasonable consumer or material"; whether "the chicken allegedly present within the products wasn't misleading because the product labels never specifically disclaimed chicken;" and whether Plaintiffs suffered any damages. (MFA at 8.) Plaintiffs acknowledge that an unfavorable outcome on the last issue in particular carries "the very real risk that they would not have recovered more than what was being offered at mediation for the Settlement Class." (Id.) Plaintiffs also point to the risks associated with certifying a class and avoiding decertification. (Id. at 9.) Furthermore, if litigation continues, Plaintiffs would still need to undergo "extensive discovery, class certification, dispositive motions, expert discovery and reports, and ultimately trial and any appeal that followed," all of which are risky, expensive, and time-consuming. (Id.) No outcome would be achieved for at least "several years." (D. Bryson Decl. ¶ 3.)

The Court believes the risk, expense, and likely duration of further litigation weigh in favor of final approval. Without the Agreement, the parties would be required to litigate class certification, as well as the ultimate merits of the case—a process which the Court acknowledges is long and expensive. Thus, these factors weigh in favor of final approval.

### 3. Amount Offered in Settlement

To determine whether the amount offered in settlement is fair, a court compares the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. In re Mego, 213 F.3d at 459. "Even a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case." Millan v. Cascade Water Servs., 310 F.R.D. 593, 611 (E.D. Cal. 2015). The Agreement does not have a gross settlement amount. Instead, the Settlement provides monetary benefits of $5.00 for every $50.00 spent on qualifying products up to $125.00 per household for Class Members who have valid proofs of purchase of at least $50.00 during the class period (Option A), or $5.00 for Class Members who do not have proofs of purchase or who spent less than $50.00 (Option B). (Agreement ¶ 51.) In the MPA Order, the Court found that the Agreement appears to provide meaningful relief to the Class Members. The Court, however, encouraged the Parties to provide additional information about the estimated recoverable damages. (MPA Order at 10.)

In the MFA, Plaintiffs do not estimate their maximum recovery in a successful litigation. Though Plaintiffs cite In re Blue Buffalo Co., Ltd., Marketing & Sales Pracs. Litig., 4:14-md-02562-RWS, at *1 (E.D. Mo. Dec. 18, 2015), as a guidepost and assert that their claims are not as strong as those in In re Blue Buffalo, Plaintiffs do not explain what this means for their estimated maximum recovery. (MFA at 7–9.) Plaintiffs next cite to a list of cases where maximum recovery ranged from $20.00 to $60.00 with proof of purchase, to $10.00 to $35.00 without proof of purchase. (Id. at 7.) Plaintiffs argue that, because other courts had approved similar settlements with lower monetary benefits than that provided in the Agreement, the recovery provided in the Agreement is reasonable. (Fee Mot. at 7.) At the September 13, 2021 hearing, Class Counsel estimated that a 10% price premium per-product in damages is the best possible recovery at trial. (MFA at 7–9.)

The Court finds Broomfield v. Craft Brew All., Inc., 2020 WL 1972505, at *9 (N.D. Cal. Feb. 5, 2020), particularly instructive. There, the court considered a settlement that that provided "per-unit monetary relief," rather than a gross settlement amount. Id. at *9. To analyze the reasonableness of the amount offered, the court looked to the size of the monetary relief, the "use of a claims process," and whether "Class Members are able to participate in the settlement without proof [of purchase]." Id. Where the per-product recovery provided more to Class Members than the "12.7% price premium per-product that Plaintiffs argue could have been obtained at trial,"[4] the use of a claims process was "inevitable" and "not inherently suspect," and Class Members were "able to participate in the settlement without proof [of purchase]," the court found that the settlement amount factor weighed in favor of approval. Id.

As in Broomfield, the per-product recovery in the Agreement is substantial because "the cost of the dogfood at issue varied from $19.99 to $64.99." (Fee Mot. at 12.) While Class Members must use a claims process, this "is inevitable." Id. Moreover, Class Members qualify for monetary relief of $5.00, even without proof of purchase, and Defendant has not set a cap on the cumulative number of claims it will honor or on its maximum cumulative payout. ("Declaration of Lisa White in Support of MPA," Dkt. No. 46.) Thus, the Court finds the settlement amount offered here is reasonable, and the factor weighs in favor of approval.

//
//
//

---

[4] The Court notes that the Broomfield decision states, "This per-unit monetary relief represents a 12.7% price premium per-product that Plaintiffs argue could have been obtained at trial," and cites to the motion for final settlement approval. Broomfield, 2020 WL 1972505, at *9. However, the motion states, "Plaintiffs determined that the per-product recovery afforded to Class Members under this Settlement represents more than the 12.7% price premium per-product that could have ultimately been obtained at trial." Pl.'s Mot. for Final Approval at *12, Broomfield v. Craft Brew All., Inc., No. 17-1027 (N.D. Cal. Feb. 5, 2020), 2019 WL 6486979 (emphasis added). Thus, the Court assumes that the settlement recovery was more than the 12.7% price premium per-product.

### 4. Extent of Discovery Completed, and the Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239. "The parties must … have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 396 (C.D. Cal. 2007) (internal quotation marks omitted).

The parties are in the early stages of litigation and have not yet conducted extensive discovery. (MFA at 9; Fee Mot. at 8.) However, Plaintiffs note that the parties engaged in "substantial" pre-suit investigation prior to mediation, including researching Defendant's products, retaining an expert who tested the products, and consulting an economist regarding the calculation of damages, as well as reviewing relevant law, regulations, guidance, and court decisions in similar litigation. (D. Bryson Decl. ¶¶ 6–8; MPA at 16–17; MFA at 2.) Prior to and during the course of their mediation and settlement negotiations, the parties also exchanged confirmatory discovery on sales figures and product testing results. (MPA at 17.) Moreover, the parties reached this Settlement after extensive negotiations facilitated by the Honorable Diane M. Welsh (retired). (MFA at 2.)

Based on this Motion, it appears that each side maintains a clear idea of the strengths and weaknesses of their respective cases, such that the extent of discovery completed and the stage of the proceedings weighs at least somewhat in favor of final approval. See Lewis v. Starbucks Corp., 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weakness of their cases.").

### 5. Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted). Here, Plaintiffs' Counsel have extensive experience in consumer class action litigation, including in litigation related to mislabeling and pet foods. (MFA at 17; D. Bryson Decl. ¶¶ 3, 40, 52; Shub Decl. Ex. B (firm resume); Mason Decl. ¶ B.2.) Plaintiffs' Counsel recommends the settlement, asserting that "the Settlement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation." (MFA at 17.) The Court finds this factor weighs in favor of final approval.

### 6. Presence of Government Participant

No governmental entity is present in this litigation. This factor is thus neutral.

//
//

7. **Opposition by Class Members**

The existence of overwhelming support for a settlement agreement by the class lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. DIRECTV, Inc., 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.")

Here, the Agreement's Notice Program reached approximately 75 percent of the target audience, or around 18,567,760 consumers. (MFA at 14–15; Finegan Decl. ¶ 29; Agreement ¶¶ 18–19.) Kroll, the settlement administrator, has received no objections or opt-out requests. (MFA at 4, 13; Finegan Decl. ¶¶ 20–21.) The deadline to opt out or object to approval of the Agreement was June 14, 2021, but no Class Members objected or requested exclusion. (Finegan Decl. ¶¶ 20–21.) The Court finds the lack of any objections probative and concludes that this factor weighs strongly in favor of approval.

E. **Attorneys' Fees and Costs**

1. **Attorneys' Fees**

Class Counsel request approval of $1,284,889.00 in attorneys' fees, slightly less than the $1,300,000.00 authorized in the Agreement. (Agreement ¶ 64.) Courts are obligated to ensure that the attorneys' fees awarded in a class action settlement are reasonable, even if the parties have already agreed on an amount. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011). The Court, in its discretion, may award attorneys' fees in a class action by applying either the lodestar method or the percentage-of-the-fund method. Fischel v. Equitable Life Assurance Soc'y, 307 F.3d 997, 1006 (9th Cir. 2002). As the Court noted in the MPA Order, the Settlement does not establish a common fund. (MPA Order at 12.) Thus, the Court applies the lodestar method to determine whether the requested attorneys' fees are reasonable.

The Court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. McGrath v. Cty. of Nev., 67 F.3d 248, 252 (9th Cir. 1995). The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 866, 895 n.11 (1984). Next, the Court must decide whether to adjust the "presumptively reasonable" lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975), abrogated on other grounds by City of Burlington v. Dague, 505 U.S. 557 (1992), that have not been subsumed in the lodestar calculation. See Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028–29 (9th Cir. 2000).[5]

---

[5] In Kerr, the Ninth Circuit adopted the 12-factor test articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), which identified the following factors for (continued . . . )

Class Counsel calculate the following subtotals:

| Milberg Coleman Bryson Phillips & Grossman, PLLC | | Hours | Hourly Rate | Lodestar |
|---|---|---|---|---|
| Attorney | Daniel K. Bryson | 134.5[6] | $875.00 | $117,687.00 |
| Attorney | Greg Coleman | 48 | $875.00 | $42,000.00 |
| Attorney | Lisa White | 138 | $750.00 | $103,500.00 |
| Attorney | Alex Straus | 39.5 | $750.00 | $29,625.00 |
| Attorney | J. Hunter Bryson | 251 | $575.00 | $144,325.00 |
| Legal Assistant | Renne Pothier | 4.3 | $206.00 | $885.80 |
| Senior Legal Assistant | Dawn Holt | 0.9 | $250.00 | $225.00 |
| Legal Assistant | Cathy Bryant | 4.3 | $206.00 | $885.80 |
| Legal Assistant | Jordon Crowe | 19 | $206.00 | $3,914.00 |
| Total | | 639.5 | | $443,048.00 |
| **Shub Law Firm LLC** | | Hours | Hourly Rate | Lodestar |
| Attorney | Jonathan Shub | 6 | $850.00 | $5,100.00 |
| Paralegal | Taylor Reynolds | 3 | $195.00 | $585.00 |
| Paralegal | Maggie O'Connor | 2 | $195.00 | $390.00[7] |
| Total | | 11 | | $6,075.00 |
| **Mason Lietz & Klinger, LLP** | | Hours | Hourly Rate | Lodestar |

---

determining reasonable fees: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  Kerr, 526 F.2d at 70.

[6] The Court notes a discrepancy in the D. Bryson Declaration regarding the number of hours for which Daniel Bryson seeks recovery.  Daniel Bryson states that he seeks to recover 134.4 hours of his time on the case at a rate of $875.00 per hour.  (D. Bryson Decl. ¶ 40.)  However, this calculation yields a lodestar of $117,600.00, whereas Daniel Bryson seeks "a total amount of $117,687."  (Id.)  A total of $117,687.00 requires 134.5 hours at the rate of $875.00 per hour.  Daniel Bryson also states that his firm "has spent 639.5 hours for a total of $443,048," which is accurate only if Daniel Bryson's time totals 134.5 hours.  (Id. at ¶ 38.)  The Court assumes the declaration erroneously stated 134.4 hours for Daniel Bryson's expended time and that 134.5 hours is correct.

[7] The Shub Declaration states Maggie O'Connor's lodestar as $6,075.00.  (Shub Decl. Ex. A.)  Given O'Connor's hourly rate of $195.00 and expended time of 2 hours, which amount to $390.00, the Court assumes the declaration made an error, and adjusts O'Connor's lodestar to $390.00.

| Attorney | Gary E. Mason | 15.4 | $875.00 | $13,475.00 |
|---|---|---|---|---|
| Attorney | Danielle Perry | 2.4 | $650.00 | $1,560.00 |
| Paralegal | Taylor Heath | 3.7 | $170.00 | $629.00 |
| Paralegal | Morgan Beauchamp | 2.8 | $170.00 | $476.00[8] |
| Paralegal | Sandra Martin | 0.6 | $170.00 | $102.00 |
| | Total | 24.9 | | $16,242.00 |
| **Goldenberg Schneider, LPA** | | **Hours** | **Hourly Rate** | **Lodestar** |
| Attorney | Jeffrey S. Goldenberg | 2.6 | $750.00 | $1,950.00 |
| Legal Assistant | Cheryl Pence | 3.7 | $150.00 | $555.00 |
| | Total | 6.3 | | $2,505.00 |
| **Levin Sedran & Berman** | | **Hours** | **Hourly Rate** | **Lodestar** |
| Attorney | Charles E. Schaffer | 13.8 | $975.00 | $13,455.00 |
| Attorney | David Magagna | 0.6 | $550.00 | $330.00 |
| | Total | 14.4 | | $13,785.00 |
| **Total for All Firms** | | **696.1** | | **$481,655.00** |

(D. Bryson Decl., ¶¶ 40–48; Shub Decl. Ex. A; Mason Decl. ¶ C.3; Goldenberg Decl. Ex. B; Schaffer Decl. ¶¶ 19, 28; Schaffer Decl. Ex. B.) When the Court adds the figures provided in Counsel's tables, collectively, the lodestar amounts to $481,655.00 for 696.1 hours of work performed. Here, Class Counsel requests fees based only on a lodestar of $443,048.00 for 639.5 hours, which is less than the total lodestar figure calculated by the Court. (Fee Mot. at 6.)

When determining the reasonableness of an hourly rate, the court "does not look to the actual rate charged by the attorney," but is "guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." Quevedo v. New Albertsons, Inc., 2015 WL 10939716, at *4 (C.D. Cal. May 27, 2015). Plaintiffs include in support of their Fee Motion examples of billing rates at firms with attorneys of comparable skill, experience, and reputation in California. (D. Bryson Decl. ¶ 37; D. Bryson Decl. Ex. 1.) This compilation shows that the average billing rate for an associate at these firms ranges between $475.00 and $735.00, and the average billing rate for a partner ranges from $790.00 to $1,150.00. Plaintiffs also submit Class Counsel's billing rates that other courts have approved, which show that one of the partners who is counsel for Plaintiffs has consistently been approved at an hourly rate of $950.00 to $975.00 per hour, while a non-partner attorney was consistently approved at an hourly rate of $450.00 to $475.00. (Schaeffer Decl. ¶ 28.) Accordingly, the Court determines that the hourly rates used to calculate the lodestar are reasonable.

//
//

---

[8] The Mason Declaration states Morgan Beauchamp's lodestar as $1,560.00. (Mason Decl. ¶ C.3.) Given Beauchamp's hourly rate of $170 per hour and expended time of 2.8 hours, which amount to $476.00, the Court assumes the declaration made an error, and adjusts Beauchamp's lodestar to $476.00.

Class Counsel next requests a lodestar multiplier of 2.9. (Fee Mot. at 6.) "In common fund cases, [], the court can apply a risk multiplier," Staton v. Boeing Co., 327 F.3d 938, 967 (9th Cir. 2003); however, this is not a common fund case. Even so, "[m]ultipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." Van Vranken v. Alt. Richfield Co., 901 F. Supp. 294, 298 (N.D. Cal. 1995). A court may "adjust [the lodestar] upward or downward based on factors including (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, and (4) the contingent nature of the fee award." Quevedo, 2015 WL 10939716, at *6.

The Court finds the analysis in Quevedo helpful to determine the reasonableness of the requested 2.9 multiplier. In Quevedo, the court found that 2.0 multiplier was "not warranted," when: (1) the "case, while contested, did not present any novel or difficult legal questions" and was "a garden-variety misclassification case of the type that frequently comes before the Court"; (2) the skill of plaintiff's counsel was "already factored into their hourly rates"; and (3) plaintiff's counsel did "not suggest this litigation precluded them from accepting other work during its pendency." Id. at *6. A fourth factor, "the contingent nature of the fee award" did "weigh[] in favor of some multiplier." Id. (emphasis in original). After considering these factors, the court decreased the multiplier to 1.2. Id. at *7.

Here, Class Counsel does not represent that Plaintiffs' case presents novel or difficult legal questions. (Fee Mot. at 8.) Rather, the cost of prolonging the litigation and the existence of weaker facts drove Plaintiff toward settling. (Id.; MFA at 7–9.) In addition, at least eight of Plaintiff's attorneys hold partner-level positions, including junior partner positions, or higher. (See White Decl.; White Decl. Ex. 2, GCL Firm Resume; White Decl. Ex. 3, Whitfield Bryson LLP Firm Resume; White Decl. Ex. 4, MLK Firm Resume; D. Bryson Decl.; Shub Decl.; Mason Decl.; Goldenberg Decl.; Schaffer Decl.) Collectively, the eight attorneys accounted for 397.8 hours of the 696.1 total hours worked on the case, or 57% of the hours billed. The 2.9 multiplier is not appropriate where "partner-level attorneys completed a substantial amount of work on the case, and Class Counsel is already being overcompensated for their work." Broomfield, 2020 WL 1972505, at *15 (reducing a 1.42 multiplier to a 1.25 multiplier). Class Counsel does suggest, however, that the instant litigation precluded them from "filling other cases" and from "other employment." (D. Bryson Decl. ¶ 38; Schaffer Decl. ¶ 22.) Finally, Class Counsel handled the case on a contingency basis, which weighs in favor of some multiplier. (Fee Mot. at 9.) Reviewing the factors on balance, the Court finds that though the last two factors support a multiplier, the first two factors do not, and the requested 2.9 multiplier is unwarranted. Accordingly, the Court will apply a 2.0 multiplier. Thus, the Court reduces the total fee award to $953,740.00, which is less than the $1,300,000.00 maximum allowed by the Agreement.

### 2. Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h); see Trans Container Servs. v. Sec. Forwarders, Inc., 752 F.2d 483, 488 (9th Cir. 1985).

"Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment are typically recoverable." Rutti v. Lojack Corp., Inc., 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012). "Expert fees" can also constitute recoverable litigation costs, Urakhchin v. Allianz Asset Mgmt. of Am., L.P., 2018 WL 8334858, at *7.

Class Counsel seek $15,100.00 in costs, which, when combined with the request for $1,284,889.00 in attorneys' fees, is less than the $1,300,000.00 authorized in the Agreement. (MFA at 15; Agreement ¶ 64.) Plaintiffs provide a breakdown of portion of the expenses incurred in the case, but not for the majority of the expenses, making it difficult for the Court to determine whether the incurred costs were reasonable. (Schaffer Decl. Ex. C; Shub Decl. ¶ 18) However, Plaintiffs state that these expenses were for "consulting expert fees, filing fees, research, mediation, and other necessary expenses." (D. Bryson Decl. ¶ 51; Goldenberg Decl. Ex. C.) Because these expenses are typically recoverable in litigation, the Court approves the requested amount of costs.

### 3. Incentive Award

Plaintiffs request a service award of $5,000.00 for Named Plaintiffs Sarah Hill and Monica O'Rourke. The Court has discretion to award incentives to class representatives. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000); Pelletz v. Weyerhaeuser Co., 592 F. Supp. 2d 1322, 1329 (W.D. Wash. 2009). The criteria courts have used in considering the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort invested by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

In the MPA Order, the Court advised Plaintiffs to provide greater detail about the Named Plaintiffs' involvement in the action and their efforts in pursuing the claims. (MPA Order at 11.) This Court has previously found that service awards are "only potentially reasonable" and not appropriate for final approval when plaintiffs "provide no concrete information about their role in the mediation, time spent participating in the litigation, or information regarding whether they were guaranteed to receive benefits." Gonzalez v. Burlington Coat Factory Warehouse Corp., 2020 WL 5775829, at *8 (C.D. Cal. Aug. 21, 2020). This is not intended to burden plaintiffs, but to simply require sufficient information for the Court to properly analyze the requested service award. See, e.g., Gonzalez v. Burlington Coat Factory, EDCV 18-666 JGB (SPx), order (citing the number of hours the named plaintiffs spent on the case); Urakhchin, 2018 WL 8334858, at *8 (finding $7,500 service awards reasonable where the class representatives asserted they "actively participated in the litigation," including by "taking time off of work to attend a deposition and the mediation"); In re Yahoo Mail Litig., 2016 WL 4474612, at *11–12 (N.D. Cal. Aug. 25, 2016) (finding $5,000 service awards reasonable where the Class Representatives "actively participated in the prosecution of th[e] case by regularly communicating and working with [Class] Counsel";

"produced personal and work-related emails, responded to interrogatories, and took time away from work to testify at a deposition"; "agree[d] to release any claims for monetary damages against [the defendant] that arise out of the 'same nucleus of operative fact'"; listed how they had "significantly benefitted" from being involved in the action; and expended time and effort over nearly three years).

Here, Plaintiffs' Fee Motion and supporting documents state that the service awards are for the Named Plaintiffs' "time and effort in stepping forward to serve as proposed class representatives, assisting in the investigation, keeping abreast of the litigation, and meeting and communicating with Settlement Class Counsel on an ongoing basis regarding the progress of the litigation, settlement efforts, and settlement terms," as well as the Named Plaintiffs' "willingness to stay apart [sic] of the litigation through a potential appeal or trial." (Fee Mot. at 16.)  This description is somewhat vague; however, the Court acknowledges that the lack of information may be due, in part, to the parties reaching settlement at an earlier stage of the litigation.  At the September 13, 2021 hearing, Class Counsel further elaborated on the Named Plaintiffs' involvement, which included collecting lot numbers for relevant products, saving receipts, and talking with Class Counsel about the misrepresentations upon which they relied. While the Named Plaintiffs did not attend mediation, they remained available by phone.  Class Counsel asserted that, though they could not provide a specific number of hours the Named Plaintiffs had expended in the course of this action, the Named Plaintiffs' efforts were integral to reaching the Settlement.  In light of this evidence, the Court finds that an incentive award is appropriate and agrees with Plaintiffs that $5,000 is a "reasonable benchmark." (Fee Mot. at 16.)  Accordingly, the Court GRANTS the incentive award of $5,000 for each Named Plaintiff.

## V. CONCLUSION

For the reasons above, the Court:

(1) GRANTS final settlement approval;

(2) GRANTS IN PART AND DENIES IN PART the request for attorneys' fees and AWARDS Class Counsel fees of $953,740.00;

(3) GRANTS the request for costs;

(4) GRANTS the request for incentive award and AWARDS Named Plaintiffs $5,000.00 each;

(5) DISMISSES the Second Amended Complaint WITH PREJUDICE.

**IT IS SO ORDERED.**